**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JOSEPH DANIEL BURNS**                                          **PETITIONER**

**VS.**                                          **CIVIL ACTION NO.: 1:04CV318-WAP**

**CHRISTOPHER EPPS, ET AL.**                                          **RESPONDENTS**

## MEMORANDUM OPINION

This matter is before the Court on the petition for writ of habeas corpus filed by

Petitioner, Joseph Daniel (a.k.a. "JoJo") Burns, pursuant to 28 U.S.C. § 2254, through which

Petitioner seeks to challenge his 1996 conviction and sentence of death for capital murder.

### Factual Background and Procedural History

The facts of the crime for which Petitioner was charged and convicted are not in dispute.[1]

On November 9, 1994, Petitioner and Phillip Hale drove to the Town House Motel in Tupelo,

Mississippi, where Mike McBride worked as the motel manager. At that time, the pair were in a

tan pickup truck Phillip had borrowed from his brother, Jeff Hale. Phillip Hale and McBride

were friends, and Phillip introduced Petitioner to McBride. Phillip asked McBride if he and

Petitioner could stay at the motel for a few days, to which McBride agreed. Petitioner and

Phillip left the motel, but they returned to the motel office later that evening after eating and

watching a movie. When they returned, McBride asked Petitioner and Phillip if they wanted to

help him count $ 30,000. Petitioner and Phillip agreed to help count the money, and while doing

so, they decided to rob McBride. They devised a plan for Phillip to hit McBride and for

---

[1] Although not an exact recitation, the facts are taken from the Mississippi Supreme
Court opinion in *Burns v. State*, 729 So. 2d 203 (Miss. 1998).

1

Petitioner to take the money. Phillip later testified that he hit McBride and left the room to make sure no one was approaching the motel office. Upon returning, he saw Petitioner stabbing McBride in the back of the neck with a knife, a fork, and a screwdriver. McBride was repeating "why me" while being stabbed. Petitioner and Phillip wiped the area for fingerprints, and they found a tin safe with a lock on it, which Petitioner opened with a pair of pliers. Petitioner and Phillip took approximately $ 3,000 from the safe in the motel office and left. It was later determined that McBride died from a combination of blunt force injuries to the head and neck and exsanguination from injuries to the face and neck.

After the stabbing, Petitioner and Phillip went to a trailer in Verona, Mississippi, where they were living with Janie Taylor and Brandie Sides. Petitioner, who was dating Taylor at the time, went into Taylor's room and told her what had happened. Petitioner and Phillip then counted the money and divided it between themselves. On November 10, 1994, Phillip parked the truck that he and Petitioner had driven to the motel behind his brother's house. At that time, Phillip's brother was not at home. Phillip was fearful that someone had seen the vehicle at the motel and would be able to link him with the robbery/murder. Petitioner told Phillip that he threw the "stuff," presumably the weapons used in the robbery/murder, behind the trailer park where they lived. A witness for the State, Carrie Cryder, testified that on December 24, 1994, Petitioner retrieved the weapons and threw them off of a bridge on Brewer Road.

Jeff Hale testified that when he returned home, he became suspicious about why Phillip had returned the truck and parked it behind his house. His suspicions were further aroused when Phillip gave Jeff $ 600 that he owed him, as Jeff did not know where Phillip had gotten the money. Although there is question as to when it happened, Phillip ultimately told Jeff that he

and Petitioner had killed McBride. On November 12, 1994, Petitioner, Phillip, and Jeff went to a Tunica casino where they gambled the money stolen from the Town House Motel, returning only with a couple of hundred dollars. At some point, Petitioner also told Jeff what had happened at the Town House Motel. A guest of the motel testified for the State that on November 9, 1994, he saw two men arrive at the motel in a truck that fit the description of Jeff's truck. He testified that they arrived at around 8:00 p.m. and left around 10:00 or 10:30 p.m. McBride's body was found by another employee of the motel around 7:00 a.m. the next morning.

Phillip and Petitioner were arrested in August 1995 for the crime, by the Tupelo Police Department who arrested them pursuant to an investigation that ensued after two anonymous phone calls were received by Crime Stoppers. Phillip told police what transpired at the motel after being picked up on a receiving stolen property charge and after Jeff urged Phillip to tell the police what had happened. While Petitioner was in the Lee County Jail, he began exchanging letters with a female inmate, Contina Kohlheim, who was also housed at the jail. The letters were signed with the name "JoJo," which was Petitioner's nickname, and were delivered through trustees and jailers. Kohlheim turned the letters over to police after being asked to do so. In one of those letters, Petitioner stated that he killed a man at the Town House Motel. Trial testimony established that no other murders had been committed at the Town House Motel. Jail administrator, Officer Buddy Bell, obtained a handwriting sample from Petitioner after one was requested by the district attorney's office. Officer Bell obtained the sample under the pretense of having Petitioner make a list of persons who would be allowed to visit him in jail. The samples given by Petitioner were compared to the letters Kohlheim gave to police, and a State expert determined that there was a strong probability that the signatures on both letters were made by

Petitioner. The expert also opined that the content of the letters was probably written by Petitioner. A fingerprint analysis showed that Petitioner's fingerprints were on both letters.

Petitioner was indicted in November of 1995 by a Circuit Court of Lee County grand jury for the capital murder of Floyd Melvin McBride while engaged in the commission of an armed robbery in violation of Miss. Code Ann. § 97-3-19(2)(e). Attorneys Melvin Ellis, III, and William Bristow were appointed to represent him at trial. Petitioner's trial began on September 2, 1996, and the jury returned a verdict of guilty on September 5, 1996. Petitioner only called one witnesses, Olen Harbin, in his defense.[2] At the sentencing phase, Petitioner informed the trial court that he did not intend to present any witnesses, and the trial judge questioned Petitioner about his waiver of a case in mitigation outside of the jury's presence. Sentencing began the next day, and the jury sentenced Petitioner to death by lethal injection.

Petitioner was denied relief on direct appeal. *See Burns v. State*, 729 So.2d 203 (Miss. 1998), *cert. denied*, *Burns v. Mississippi*, 527 U.S. 1041 (1999), *reh'g denied*, *Burns v. Mississippi*, 527 U.S. 1059 (1999) ("*Burns I*"). Petitioner's petition for post-conviction relief was granted in part and denied in part, with an order allowing Petitioner to pursue in the trial court his claim of ineffective assistance of counsel at the sentencing phase of his trial. *See Burns v. State*, 813 So.2d 668 (2001) ("*Burns II*"). The sitting judges of the Circuit Court of Lee County recused themselves and requested that Frank Russell, the original trial judge, be appointed. The Mississippi Supreme Court granted this request per order dated June 5, 2002. Following an evidentiary hearing, Judge Russell found that Petitioner had failed to demonstrate

---

[2] Harbin, a guest of the motel on the night McBride was murdered, testified that he believed that a man and a woman were in the truck linked to Phillip Hale on the night of November 9, 1994.

by a preponderance of the evidence deficiency or prejudice in trial counsel's performance, and post-conviction relief was denied. (*See* PCR Hr'g Tr. Vol. 1, 109-111). The Mississippi Supreme Court affirmed Judge Russell's ruling. *See Burns v. State*, 879 So.2d 1000 (Miss. 2004) ("*Burns III*"). Petitioner filed his petition for writ of habeas corpus with this Court on June 20, 2005. (*See* docket entry no. 4). Respondents filed their answer to the petition on June 20, 2007. (*See* docket entry no. 22). Each party has submitted a memorandum in support of their respective filings, and this matter is now ripe for consideration.

## Applicable Standard

This petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 324-26, 117 S. Ct. 2059, 2062-63, 138 L. Ed. 2d 481 (1997) (AEDPA applies to all federal habeas applications filed on or after April 24, 1996. Pursuant to the AEDPA's scope of review, habeas corpus relief cannot be granted in connection with any claim adjudicated on the merits in State court proceedings unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See Schriro v. Landrigan*, ___ U.S.___, 127 S. Ct. 1933, 1939-40 (2007); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); and 28 U.S.C. § 2254(d)(1) & (2). The factual findings of the State court are presumed correct, and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d) have been held to have independent meanings. *See, e.g., Bell v. Cone*, 535 U.S. 685, 694 (2002); and

*Penry v. Johnson*, 532 U.S. 782, 792 (2001). Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry, and it does not turn on whether the decision is merely incorrect. *See Schriro*, ___ U.S. at ___, 127 S. Ct. at 1939 ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Williams,* 529 U.S. at 410-11; *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (habeas relief merited where state decision both incorrect and objectively unreasonable).

A petitioner must exhaust his remedies in State court prior to seeking federal habeas relief. *See Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); 28 U.S.C. §2254(b)(1). A petitioner has exhausted his claim when he has fairly presented the claim for which he seeks relief to the highest court of the State. *See Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). The federal claims presented for habeas relief must be the substantial equivalent of those presented to the State court in order to satisfy the requirement of fair presentation. *See Morris*, 379 F.3d at 204-05; *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). A claim is not exhausted for purposes of federal habeas review if a petitioner presents the federal court with different legal theories or factual claims than those

pursued in State court.  *See Wilder*, 274 F.3d at 259 ("[W]here petitioner advances in federal

court an argument based on a legal theory distinct from that relied upon in the state court, he

fails to satisfy the exhaustion requirement."); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir.

2001).   A federal court may not grant federal habeas relief on an unexhausted claim, but relief

may be denied on an unexhausted claim.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ

of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State."); *see also Mercadel v. Cain*, 179 F.3d

271, 276 (5th Cir. 1999).

       Where a petitioner fails to exhaust his State remedies, but it is clear that the State court to

which he would return to exhaust the claim would find the claim procedurally barred, the claim

is procedurally defaulted for purposes of federal habeas corpus relief.  *See*, *e.g.*, *Coleman v.

Thompson*, 501 U.S. 722, 735 n.1 (1991); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001);

*Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  Likewise barred from federal habeas review

are claims that the State court held procedurally barred on review on the basis of independent

and adequate State law grounds.  *See, e.g., Coleman*, 501 U.S. at 729-30 ("The doctrine applies

to bar federal habeas claims because the prisoner had failed to meet a state procedural

requirement.  In these cases, the state judgment rests upon independent and adequate state

procedural grounds."); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).  In order to receive

federal habeas review of procedurally defaulted claims, Petitioner must demonstrate "'cause' for

the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal

claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50

(internal citations omitted).

In order to demonstrate cause, a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice may be demonstrated by showing that the errors "worked to [the petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (internal quotations omitted). If a petitioner is unable to demonstrate cause and prejudice, he may obtain review of his claim by demonstrating that the application of the procedural bar would result in a miscarriage of justice because he is actually innocent of the crime. *See House v. Bell*, 547 U.S. 518, 537-38 (2006).

Where a State court holds a claim barred on independent and adequate State law grounds and reaches the merits of the claim in the alternative, the bar imposed by the State court is not vitiated. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005) (alternate holding on merits by state court did not preclude imposition of bar on federal habeas review for petitioner's failure to contemporaneously object on federal constitutional grounds in State court); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (procedural bar imposed for petitioner's failure to contemporaneously object and preserve claim for review not circumvented by State court's alternative holding that constitutional claim lacked merit).

Finally, the Court notes that the AEDPA imposes the burden of obtaining an evidentiary hearing in federal court on the petitioner, and it limits the circumstances in which an evidentiary hearing may be granted for those petitioners who fail to diligently seek to establish the factual bases for their claims in state court. *See Williams*, 529 U.S. at 433-34 (prisoners at fault for

deficiency in state court record must satisfy heightened standard to obtain evidentiary hearing); *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000); *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); 28 U.S.C. § 2254(e)(2). Even where an evidentiary hearing is not precluded due to a petitioner's lack of diligence, the decision to grant an evidentiary hearing is discretionary. *See, e.g., Clark*, 202 F.3d at 765-66. In order to be entitled to an evidentiary hearing in federal court, a petitioner must demonstrate that he was denied a "full and fair hearing" in State court and persuade the Court that his allegations, if true, would warrant relief. *Id.* at 766 (citations omitted).

## I. Error in Admission of Handwriting Exemplars

Petitioner maintains that he was denied his Fifth and Sixth Amendment rights when handwriting samples obtained through deceit were allowed to come into evidence at trial. (Pet. Memo 7). First, Petitioner maintains that the identification aspect of the handwriting sample was testimonial in nature and was only used against him at trial because it identified him. (Pet. Memo 8). Petitioner also asserts that the exemplars were taken after his arrest and indictment when he had two appointed attorneys, such that his Sixth Amendment rights were violated. (Pet. Memo 8-10).[3]

At trial, Contina Kohlheim, a female inmate housed at the Lee County Jail at the same time as Petitioner, testified that she and Petitioner exchanged handwritten letters. (See Trial Tr. Vol. 5, 342). Kohlheim gave two of the letters to law enforcement. (*See id.* at 350). These letters contained admissions and statements regarding the capital murder charges against

---

[3] Petitioner also raised a Fourth Amendment challenge on direct appeal, which he has not asserted in these proceedings. (*See* Pet. Memo 8).

Petitioner.  (*See*, *e.g.*, Trial Tr. Vol. 6, 520-22).  Jail administrator, Lieutenant Buddy Bell, testified that he obtained a handwriting sample from Petitioner after being requested to do so by the district attorney's office so that a comparison of Petitioner's handwriting could be made with the letters obtained from Kohlheim.  (*See*, *e.g*, Trial Tr. Vol. 5, 356).  Lieutenant Bell testified that he obtained the sample by asking Petitioner to write down the names of persons who should be allowed to visit him in jail, as he did not feel that Petitioner would have cooperated with his request to provide a sample.  (*See id.* at 359-60).  Trial counsel filed a motion to suppress the exemplars given by Petitioner, and the trial judge denied the motion.  (*See id.* at 362-63).

On direct appeal, the Mississippi Supreme Court rejected Petitioner's contention that the taking of the sample violated his Fifth Amendment right against self-incrimination, as handwriting exemplars are merely identifying characteristics not protected under the privilege. *See Burns I*, 729 So. 2d at 216 (citing *Gilbert v. California*, 388 U.S. 263, 266-67 (1967)).  The court determined that Petitioner's complaint was the taking, rather than the contents, of the sample.  *See id.*  Therefore, the court noted that the handwriting was a means of identification rather than a compelled self-incrimination and found Petitioner's Fifth Amendment claim without merit.  *Id.*

The court also rejected Petitioner's argument that the taking of the exemplars violated his Sixth Amendment right to counsel, as the taking of the samples was not a "critical stage" of the proceedings.  *Id.* at 217 (citing *Gilbert*, 388 U.S. at 267).  The court noted that the central issue to *Gilbert*'s holding is the right of confrontation.  *Id*.  Noting that Lieutenant Bell was examined on the suppression motion, and counsel cross-examined the State's handwriting expert, the court found Petitioner was not denied an opportunity to confront witnesses.  *Id.*  The court

acknowledged that it had not decided the precise issue raised by Petitioner, but it otherwise determined that no constitutional violation occurs by the absence of counsel during a non-critical stage when a defendant is provided an opportunity to cross-examine or otherwise confront witnesses against him. *Id.* The court found that Petitioner had the opportunity to cross-examine witnesses and was provided an opportunity to "avert prejudice at trial." *Id.*

Petitioner again raised this claim on post-conviction review, where the Mississippi Supreme Court found it procedurally barred. *See Burns II*, 813 So. 2d at 680.[4] Notwithstanding the bar, the court reiterated that the content of the exemplars contained no admissions or statements of evidentiary worth. *Id.* The court also noted that there was no explanation for Petitioner's fingerprints being on the letters obtained from Kohlheim, such that any error that might have resulted from the admission of the exemplars was harmless. *Id.*

A person's handwriting, unlike the content of what is written, "is an identifying physical characteristic" that falls outside of the Fifth Amendment's protection against self-incrimination. *See Gilbert v. California*, 388 U.S. 263, 266 (1967). The Fifth Amendment acts to safeguard "the contents of [an accused's] own mind, that implicates the Self-Incrimination Clause." *See Doe v. United States*, 487 U.S. 201, 211 (1988) (internal citations omitted). As the government in this case sought only to discern the physical characteristics of Petitioner's handwriting, the evidence presented against him was not testimonial and did not implicate the Fifth Amendment privilege. *See United States v. Mara*, 410 U.S. 19, 22 n. * (1973) (witness may assert Fifth Amendment privilege where government seeks incriminating content, rather than physical

---

[4] The court held the claim barred pursuant to Miss. Code Ann. § 99-39-21(1), which it determined prohibits relitigation of issues addressed on direct appeal. *See Burns II*, 813 So. 2d at 681.

characteristics, of handwriting); *United States v. Wade*, 388 U.S. 218, 222 (1967) (handwriting exemplar is identifying physical characteristic not protected by the Fifth Amendment privilege against self-incrimination).

The taking of handwriting exemplars in this case was not a pretrial procedure that carried with it "potential substantial prejudice" that the assistance of counsel could have helped to avoid. *See Wade*, 388 U.S. 218 at 227. Petitioner was provided the opportunity to confront the proof against him at trial. As the taking of a handwriting sample is a non-testimonial identification procedure, the protections of the Sixth Amendment right to counsel are not triggered, regardless of when or how the procedure is employed. *See, e.g.*, *Gilbert*, 388 U.S. at 267 (taking of exemplars not a critical stage at which accused is entitled to counsel); *see also United States v. Walker*, 453 F.2d 1205, 1207 (5th Cir. 1972) (finding no prejudice to accused where government used handwriting samples to compare with handwriting on previously seized documents without telling accused purpose for giving sample since compelling a handwriting sample does not violate the Fifth Amendment or Sixth Amendment). Petitioner has not demonstrated that the Mississippi Supreme Court's resolution of this claim warrants relief under the AEDPA, and it is dismissed.

## II. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). A federal habeas petitioner's claim that he was denied the effective assistance of counsel at trial is measured by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that (1) his

trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense. *See id.* at 687; *see also Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996) (ineffective assistance of counsel claims analyzed under *Strickland* framework).

Where an attorney's representation falls below an objective standard of reasonableness as determined by professional norms, that performance is deficient. *See Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Strickland*, 466 U.S. at 687-89. Courts scrutinizing counsel's performance assume a "strong presumption" that the assistance was adequate and "that the challenged conduct was the product of reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996) (citation omitted). This presumption may be overcome if a petitioner can identify acts or omissions of counsel that were not the result of a reasoned, professional judgment. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, even unreasonable errors by counsel do not warrant relief if the error did not effect the judgment. *See Strickland*, 466 U.S. at 691. Rather, actual prejudice results from the errors of counsel when there exists a reasonable probability that, but for the error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See Strickland*, 466 U.S. at 397; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998); *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990). As claims of ineffective assistance of counsel involve mixed questions of law and fact, claims previously considered and rejected by the State court may be overturned only if "contrary to, or involv[ing] an unreasonable application of, clearly established Federal

13

law, as determined by the Supreme Court of the United States." *See Strickland*, 466 U.S. at 698;

28 U.S.C. § 2254(d)(1).

Counsel's failure to preserve a claim in State court can in some circumstances constitute

cause sufficient to overcome a procedural default. *See Coleman*, 501 U.S. at 753-54. However,

a petitioner claiming ineffective assistance of counsel for the purpose of having the underlying

substantive claim reviewed on its merits must ordinarily have presented the ineffective assistance

of counsel claim independently in State court before it may be argued as cause to excuse a

procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451(2000).

**A. Guilt Phase**

**1. Failure to ensure that all proceedings were recorded**

At trial, defense counsel filed a pre-trial motion requesting that all proceedings in the

case be recorded, and the trial court granted the motion. (Pet. Memo 15-16). Petitioner

maintains that at least twenty-two bench conferences went unrecorded, and that trial counsel's

failure to ensure that all proceedings were recorded constitutes ineffective assistance of counsel.

(Pet. Memo 16).

On direct appeal, the Mississippi Supreme Court found that the approximately twenty-

four bench conferences that were held without the benefit of a court reporter concerned mainly

administrative manners in which no trial rulings were made. *See Burns I*, 729 So. 2d at 211.

The court determined that the record was "sufficiently complete" to allow full appellate review.

*Id.* The court found that "many" of the unrecorded bench conferences in Petitioner's case did

not occur as the result of an objection. *Id.* at 212. The court found Petitioner had failed to

demonstrate any prejudice due to the fact that some of the bench conferences in his case went

unrecorded, as he did not raise an argument that the record was insufficient to support any of his claims on appeal. *Id.* The court likened Petitioner's case to the facts and holding in *Thorson v. State*, 653 So. 2d 876 (Miss. 1994). *Id.* The court determined that in both cases, the defendant filed a motion asking that all proceedings be recorded, which the trial court granted. *Id.* In both cases, counsel for the defendant participated in bench conferences without calling the absence of a recording to the trial court's attention. *Id.* The court noted that in *Thorson*, the court found that "[i]t is in poor grace for counsel to participate without objection in unrecorded bench conferences and complain for the first time on appeal." *Id.* Finding no distinction between the two cases, the Mississippi Supreme Court held Petitioner's claim without merit. *Id.* On post-conviction review, the Mississippi Supreme Court considered this claim in the context of ineffective assistance of counsel. *See Burns II*, 813 So. 2d at 674. The court found that Petitioner did not demonstrate any prejudice as a result of the unrecorded conferences. *Id.* at 674-75.

In his federal habeas petition, Petitioner does not demonstrate any prejudice from the fact that some bench conferences went unrecorded at his trial. He merely states that the trial court did not follow its own directive and implies that important information might be missing from the record. Petitioner's allegations are insufficient to entitle him to relief on this claim. *See*, *e.g.*, *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1994) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

### 2. Failure to secure adequate funds

Defense counsel filed a pre-trial motion requesting the assistance of an independent

psychologist, asserting that Petitioner may have been in a state of diminished capacity at the time of the offense. At hearing on the motion, the trial court found that Petitioner had not made a sufficient showing to warrant the funds. (*See* Trial Tr. Vol. 3, 37). Petitioner maintains that trial counsel failed to offer any argument as to how much an expert would cost, why an expert was needed, and that counsel failed to offer any proof regarding Petitioner's mental, emotional, or physical capacity. (*See* Pet. Memo 17). Petitioner argues that there is nothing in the record to demonstrate that Petitioner was competent at the time of trial. Petitioner asserts that trial counsel performed inefficiently in failing to investigate Petitioner's educational, physical, and mental background prior to making the motion for a psychological expert, and that the absence of evidence of Petitioner's mental illness or psychological problems stems from trial counsel's failure to investigate those avenues. (*See* Pet. Memo 17). Petitioner argues that the fact that the charge against him involved a brutal murder committed with a fork and a screwdriver, followed by a gambling spree in which the money from the robbery/murder was spent, is sufficient to rebut the Mississippi Supreme Court's finding that Petitioner's case contained no evidence that Petitioner "actually had any psychological problems, mental illness or would be a danger to society." (Pet. Memo 17-18, citing *Burns I*, 729 So. 2d at 224). Petitioner otherwise maintains that trial counsel failed to seek interlocutory relief from the trial judge's order, and as he did not, Petitioner was denied the access to experts necessary to properly present his defense. (*See* Pet. Memo 20).

The Mississippi Supreme Court considered Petitioner's assignment of error relating to the trial court's denial of funds on direct appeal, where it found Petitioner failed to present to the trial court any evidence of "psychological problems, mental illness, or [that he] would be a

danger to society." *See Burns I*, 729 So. 2d at 224. The court concluded that a defendant's "undeveloped assertions that the expert would be beneficial" is insufficient to establish a due process violation based on the denial of expert assistance. *See id.*, citing *Caldwell v. Mississippi*, 472 U.S. 320 (1985). The court found that Petitioner did not outline the "cost, value and purpose of an expert" as required under state law, and the record contained no indication that he suffered from diminished capacity at the time of the murder. *Id.* Additionally noting that the record contained no reference to any potential competency issues, the court found Petitioner's claim without merit. *Id.*

On post-conviction review, Petitioner raised an ineffective assistance of counsel claim based on trial counsel's failure to support the motion for psychiatric assistance with evidence. *See Burns II*, 813 So. 2d at 676. Petitioner submitted to the post-conviction court an affidavit from himself, as well as an affidavit from Brandie Horne, the mother of one of his children. *Id.* The court noted that the affidavits stated that Petitioner had received head injuries, and Brandie Horne's affidavit stated that Petitioner had received "numerous head injuries" and had been in "numerous fights." *Id.* The court found that Petitioner "still has not shown by any reliable measure that his psychiatric condition then or now required attention or that the outcome of his trial was in any way affected. As the Court found in the direct appeal, there still is no indication that [Petitioner] suffers from any psychological condition. This Court finds no merit in this issue." *Id.*

A criminal defendant is entitled to the assistance of a psychiatric or psychological expert when he demonstrates "that his sanity at the time of the offense is to be a significant factor at trial." *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Where there is "little more than undeveloped

assertions that the requested assistance would be beneficial," a defendant is not denied due process by the trial court's denial of the requested expert assistance. *See Caldwell v. Mississippi*, 472 U.S. 320, 322 n.1 (1985). When the trial court denied Petitioner's motion in the instant case, it stated that both the record and motion were silent with respect to any psychological problems experienced by Petitioner, either past or present. (*See* Trial Tr. Vol. 3, 37). Petitioner here, too, fails to demonstrate what an investigation into his psychological history would have produced. Petitioner has presented the Court with no information that should have alerted his trial counsel that Petitioner was suffering from a mental defect or disease that might affect his competency to stand trial. A claim of inadequate investigation requires Petitioner to specify what an additional investigation would have yielded and how that would have made a difference at trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Petitioner's allegation that trial counsel performed ineffectively in failing to provide more support for the motion is insufficient to warrant federal habeas relief, particularly as Petitioner himself has only alleged the presence of head injuries as an additional fact that would have supported the grant of the motion. This claim shall be dismissed.

### 3. Failure to interview critical witnesses

Petitioner maintains that trial counsel rendered ineffective assistance in failing to interview Jeff Hale, the brother of Petitioner's former co-defendant, as Jeff Hale's testimony was crucial to the investigation of Petitioner's defense. (Pet. Memo 21). One week before trial, the State provided a statement given by Jeff Hale, and defense counsel moved for a continuance on the basis that they needed time to interview him. (*See* Trial Tr. Vol. 3, 65). The trial court denied the motion, and Petitioner maintains that trial counsel failed to interview Jeff Hale in the

interim. (Pet. Memo 21). At trial, Jeff Hale testified that both his brother and Petitioner confessed to him their respective involvements in the murder. (*See, e.g.*, Trial Tr. Vol. 5, 416-17). Jeff Hale also testified that he accompanied his brother and Petitioner to Tunica a few days after the murder where they gambled the stolen money. (*See id.* at 417-18, 422).

On direct appeal, Petitioner raised a challenge to the trial court's denial of his request for a continuance based on the State's expressed intention to present the testimony of Jeff Hale that was obtained only ten days before trial. *See Burns I*, 729 So. 2d at 213. The Mississippi Supreme Court noted that the trial judge denied the motion for a continuance stating, "[y]ou've got a week from today before we start picking a jury from this morning. You've got an investigator. Get to work. If you want to interview him, interview him. The State has a continuing obligation to supplement discovery just like the defendant does." *Id*. The court determined that trial counsel had sufficient time to interview Jeff Hale, and that Petitioner was aware of the State's intention to call him as a witness eight months before trial. *Id*. The court found Petitioner's assignment of error without merit. *Id.*

As Respondents argue, and the Court agrees, Petitioner's claim that trial counsel failed to interview Jeff Hale has never been presented to the State court and is unexhausted. *See Ruiz v. Quarterman*, 460 F.3d 638, 642-43 (5th Cir. 2006) (petitioner must present federal habeas court with "same facts and legal theory upon which the petitioner bases his current assertions" in order for the claim to be exhausted).[5] As Petitioner has no available means of raising this claim in State court due to the State's time and successive petition bars, the Court must find the claim

---

[5] Petitioner presented the State court with a claim that the denial of his request for a continuance and the discovery violation by the State deprived him of the effective assistance of counsel, but he did not claim that trial counsel rendered ineffective assistance in failing to investigate, which is the claim here raised.

procedurally barred absent Petitioner's demonstration of cause and prejudice for the default. *See id.* at 643; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); Miss Code Ann. §99-39-5(2)( time bar) and § 99-39-27(9) (successive petition bar). Procedural bar notwithstanding, the Court determines Petitioner has failed to allege what an investigation of Jeff Hale would have revealed or how it would have altered the outcome of Petitioner's trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial."). Petitioner's argument in conclusory and is insufficient to warrant federal habeas relief. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of ineffective assistance of counsel do not raise constitutional issue). This claim shall be dismissed.

**B. Sentencing Phase**

On September 6, 1996, the trial court was informed that Petitioner did not intend to call any witnesses during the sentencing phase of trial. (*See* Trial Tr. Vol. 6, 583). The trial court conducted a voir dire as follows:

> Q.  Mr. Burns, I've been advised by your attorneys that you do not intend to call any witnesses in this phase of the trial or to introduce any evidence, other than a stipulation with respect to your date of birth or your age at the time of this offense. Is that correct?
> A.  That's correct, sir.
> Q.  Do you realize that you have every right to present witnesses or present evidence of any fact or circumstances in way of establishing mitigating facts and circumstances?
> A.  Yes, sir.
> Q.  And you do have the right to take the stand and testify in your own behalf. Do you understand that?
> A.  Yes, sir.
> Q.  Have you discussed this decision with your attorneys and sought their advise concerning the fact that you do not desire to offer any evidence

20

| | whatsoever or testify in this sentencing phase? |
|---|---|
| A. | Yes, sir. |
| Q. | And it is ultimately your decision to not present any evidence of mitigation or otherwise during this phase of the trial? |
| A. | Yes, sir. |
| Q. | Very well. |

(Trial Tr. Vol. 6, 583-84).

During Petitioner's post-conviction proceedings, Petitioner obtained affidavits from seven individuals who each stated they would have testified on Petitioner's behalf if they had been asked to do so. (*See, e.g.*, PRC Hr'g Tr. Vol. 1, 62-63, 64-65, 70-71, 72, 73-74, 75-76, 77-78). Affidavits were obtained from three of the jurors who heard Petitioner's case, and each indicated that they wanted information about Petitioner's background during trial. (*See id.* at 79-81). After reviewing the substance of the affidavits, the court granted Petitioner leave to present his claim to the Circuit Court of Lee County. *See Burns II*, 813 So. 2d at 678-79. The court determined that an evidentiary hearing was warranted to determine whether the decision not to present witnesses in mitigation was a defensible trial strategy. *Id.* at 679.

The Mississippi Supreme Court subsequently appointed the Honorable Frank Russell, the former judge who presided over the original trial, as Special Judge to preside over the evidentiary hearing. *See Burns III*, 879 So. 2d 1000, 1002 (Miss. 2004). On December 10, 2002, the trial court held an evidentiary hearing to determine whether Petitioner received ineffective assistance of counsel at the sentencing phase of his capital murder trial. (*See* PCR Hr'g Tr. Vol. 2, 2). By order dated February 19, 2003, Judge Russell denied Petitioner's motion for post-conviction relief, finding that Petitioner had failed to demonstrate by a preponderance of the evidence that trial counsel performed deficiently or that Petitioner was prejudiced as a result of trial counsel's performance. *See id.* at 109-111. Petitioner appealed the denial of post-

conviction relief to the Mississippi Supreme Court.

The Mississippi Supreme Court noted that the standard of review after an evidentiary hearing in a post-conviction relief case is "clearly erroneous," and that Miss. Code Ann. § 99-39-23(7) requires the prisoner to prove an entitlement to relief by a preponderance of the evidence. *Burns III*, 879 So. 2d at 1004. In its review, the Mississippi Supreme Court recounted the evidence presented to the trial court. *See id.* at 1004-1005. During the hearing before the trial court, the defense presented testimony from one of Petitioner's former employers, Petitioner's mother, Petitioner's sister, and the mother of Petitioner's youngest daughter. (*See* PCR Hr'g Tr. Vol. 2, 4-75). The Mississippi Supreme Court summarized the potential mitigation evidence presented to the trial court at the evidentiary hearing as including that: "1) Burns was a skilled electrician; 2) he was seven when his parents were divorced and subsequently his mother had to work during the day and night to support the family; 3) his older sister was responsible for much of his care; 4) his two brothers are deceased; 5) he has two daughters; 6) his accomplice may have been the leader; and 7) that his criminal problems stemmed from his drug use." *Burns III*, 879 So. 2d at 1007. The court also considered affidavits from three jurors from the original trial, each who stated they would have considered information offered by Petitioner prior to sentencing Petitioner. *Id.*

At the evidentiary hearing, the State introduced certified copies of Petitioner's three prior felony convictions, and the testimony of trial counsel Melvin Ellis and William Bristow. (*See* PCR Hr'g Tr. Vol. 2, 76-105). In its appellate review of the trial court's decision, the Mississippi Supreme Court noted that lead trial counsel, Mel Ellis, testified that it was Petitioner's decision not to call any witnesses. *See Burns III*, 879 So. 2d at 1005. The court

found that Ellis testified that he was unable to locate his case file for the trial court's consideration, but he testified that he believed at the time of trial that Petitioner would likely be sentenced to death if no witnesses were called on his behalf. *Id.* Will Bristow, who served as defense co-counsel, testified that he deferred to Ellis for all strategy decisions at trial. *Id.* After reviewing all of the evidence presented to the trial court, the Mississippi Supreme Court determined that the record confirmed that it was Petitioner's decision not to call witnesses or otherwise present evidence in mitigation. *Id.* The court noted that Petitioner's argument was that trial counsel performed ineffectively in failing to advise Petitioner the likely consequences of foregoing a case in mitigation. *Id.* Ellis testified that he advised Petitioner of that fact, and the court found that Ellis was instructed not to present any witnesses. *Id.* at 1005-06. The court also noted that trial counsel hired an investigator to help prepare Petitioner's defense. *Id.* at 1006. The court found that Ellis' testimony established that Petitioner was counseled on the likely consequences of failing to present any mitigating evidence. *Id.*

The Mississippi Supreme Court also determined that Petitioner had not presented evidence of substantial mitigating evidence that trial counsel failed to uncover and present. *Id.* at 1006. The court determined the case "most on point" to the issue before it was *Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000). *Id.* The court noted that the Fifth Circuit found in that case that trial counsel did not perform deficiently in failing to call the defendant's family members to testify in mitigation, as the defendant instructed trial counsel not to call his family members to testify and the witnesses were otherwise uncooperative. *Id.* Relying upon *Dowthitt*, the Mississippi Supreme Court found that Petitioner's trial counsel performed reasonably "considering both that he acted according to [Petitioner's] instructions and that his efforts to

23

investigate potential mitigation evidence were thwarted by uncooperative witnesses." *Id.* at 1006-07. The court also found that Petitioner could not demonstrate prejudice, as he failed to demonstrate that a reasonable probability existed that the outcome would have been different had the evidence been introduced. *Id*. at 1007. The court also determined that had the witnesses been called, the State would have been able to rebut the mitigation evidence offered. *Id.* The court, in addressing the juror affidavits, noted that the affidavits established the jurors would have considered the evidence presented to them, which "simply demonstrates that these jurors would have followed their instructions." *Id.* Therefore, the court found no error in the trial court's denial of post-conviction relief. *Id.*

At the evidentiary hearing before the trial court, Petitioner's mother, Jean Henry, stated that she did not attend the trial because Petitioner's attorneys advised her she might be a potential witness. (*See* PCR Hr'g Tr. Vol. 2, 33). Brandie Horne, the mother of Petitioner's youngest child, informed Petitioner's investigator that she did not want to testify at trial. (*See id.* at 47, 50). Petitioner's sister, Dalana Green, stated she was advised by Petitioner's attorneys not to attend the trial, as she was a potential witness. (*See id.* at 67). Dalana testified that Petitioner's investigator asked her for the names of persons who might testify on Petitioner's behalf, and that she was unable to give him any information. (*See id.* at 68). Both Mrs. Henry and Mrs. Green testified that they were unaware that Petitioner had instructed his attorneys not to call anyone to testify on his behalf at sentencing. (*See id.* at 31-32, 69). All three women testified that they were aware of Petitioner's prior felony convictions, and Mrs. Horne and Mrs. Green testified that they likely conveyed that information to the investigator, along with their knowledge of Petitioner's drug abuse. (*See id.* at 27, 45, 52, 64, 69).

Petitioner cites to *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Williams v. Taylor*, 529 U.S. 362 (2000) for the proposition that his trial counsel's failure to investigate and introduce mitigating evidence can not reasonably be deemed a strategic decision. (*See* Pet. Memo 26-38). However, the United States Supreme Court has distinguished those cases from situations where a defendant informs his trial counsel not to present any evidence in the sentencing phase of trial. *See Schriro v. Landrigan*, ___ U.S. ___, 127 S. Ct. 1933, 1942 (2007) (Court noting that it had not previously addressed the circumstance where "a client interferes with counsel's efforts to present mitigating evidence to a sentencing court"). Where trial counsel is instructed not to present any mitigating evidence at the sentencing phase of a capital murder trial, "counsel's failure to investigate further" is not prejudicial under *Strickland. See Schriro*, ___ U.S. ___, 127 S. Ct. at 1941; *see also Amos v. Scott*, 61 F.3d 333, 348-49 (5th Cir. 1995) ("A petitioner can show no defective performance under *Strickland* by his counsel's failure to interview witnesses whom the petitioner has opposed having testify.").

The finding that defense counsel informed Petitioner of his options, and that Petitioner elected not to present a case in mitigation, has not been sufficiently rebutted. *See Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993), citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982) (habeas statute obliges federal court to respect credibility determinations made by trier of fact). Moreover, the record is clear that trial counsel was actively pursuing potential avenues of defense and/or mitigation, as evidenced by the statements of Petitioner's family members. The Court determines that the Mississippi Supreme Court's decision on this issue is not contrary to, nor does it involve an unreasonable application of, clearly established federal precedent

concerning claims of ineffective assistance of counsel, and this claim shall be dismissed.

### III.  Remaining Ineffective Assistance of Counsel Claims

By order dated April 25, 2006, the parties were directed by the Court to submit memorandums in support of their respective filings.  Petitioner filed a memorandum brief in support of his petition for writ of habeas corpus that addressed only his claims concerning counsel's performance at trial and the trial court's admission of the handwriting exemplars.  (*See* docket entry no. 21).  When a party does not address an issue in his brief to the district court, the failure constitutes waiver on appeal.  *See Lookingbill v. Cockrell*, 293 F.3d 25, 264 (5th Cir. 2002).  By analogous reasoning, the argument would also be waived before this Court. However, the Court will address each claim raised in the petition itself, but it notes that Petitioner bears the burden of demonstrating an entitlement to relief as to each claim.  *See*, *e.g*., *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985) (petitioner bears the burden of proof on claim of ineffective assistance of counsel); *see also Strickland*, 466 U.S. at 690-91 (defendant claiming ineffective assistance of counsel must overcome presumption that counsel's performance was adequate and that challenged conduct was product of reasoned trial strategy).

### A.  Jury selection during recess

Petitioner argues that trial counsel rendered ineffective assistance when counsel allowed the jury to be selected during a recess, presumably because there is no record of the peremptory challenges exercised by either the State or the defense.  On post-conviction review the Mississippi Supreme Court rejected Petitioner's assignment of error, finding that Petitioner had failed to demonstrate that his attorneys were ineffective in the jury selection process.  *See Burns*

*II*, 813 So. 2d at 675.[6]  Petitioner has not alleged that a biased or ineligible juror was seated at his trial, and therefore, even assuming deficiency in trial counsel's failure to have the record made explicit with regard to peremptory challenges, he has demonstrated no prejudice.  *See, e.g., Teague v. Scott*, 60 F.3d 1167, 1172-73 (5ᵗʰ Cir. 1995) (holding complaints about trial counsel's performance at voir dire fail to satisfy prejudice prong of *Strickland* without allegations demonstrating a biased juror was seated); *Clark v. Collins*, 19 F.3d 959, 965 (5ᵗʰ Cir. 1994) (absent allegation that bias tainted jury, trial counsel's conduct during voir dire fail to satisfy Strickland's prejudice prong).

**B.  Drawing of the special venire**

The Mississippi Supreme Court rejected Petitioner's claim that his trial counsel performed ineffectively in failing to either secure or waive Petitioner's presence at the drawing of the special venire, finding that Petitioner did not allege "impropriety in the drawing" or bias of any venireman.  *See Burns II*, 813 So. 2d at 676.  Petitioner has here alleged no defect in the drawing or resulting prejudice, and he is not entitled to relief on this claim.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5ᵗʰ Cir. 2000) ("Conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel."); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5ᵗʰ Cir. 1983) ("[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

**C.  Sentencing options**

---

[6] The Mississippi Supreme Court found that "the entire selection process is on the record" and that trial counsel failed to exercise any peremptory challenges.  *See Burns II*, 813 So. 2d at 675.  Following challenges for cause, which are included in the record, the trial judge told counsel for both sides to "[g]et us 14 jurors."  *See* Trial Tr. Vol. 4, 232.  A recess was then held, and when court resumed, the jury was seated.  *See id*.

On post-conviction review, the Mississippi Supreme Court considered Petitioner's claim that trial counsel performed ineffectively in failing to object to the trial court's instructions allowing only the sentencing options of death or life without parole. *See Burns II*, 813 So. 2d at 677. Specifically, Petitioner argued that the jury should have been instructed that a verdict of life with parole was available. *Id.* The court found that the legislature had removed parole as an option for those convicted of capital murder, and it otherwise noted that "[i]t is not logical to think that had the jury been given the option of life without parole, they might have selected that option over the death penalty." *Id.* (citation omitted).[7] Petitioner has not demonstrated that trial counsel performed deficiently in failing to raise a legally meritless objection, and no prejudice stems from trial counsel's failure to object to an instruction in accordance with the law. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (there is no prejudice from counsel's failure to make a meritless objection); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) (prejudice does not issue from failure to raise legally meritless claim).

### D. Defense counsel's opening argument

On post-conviction review, the Mississippi Supreme Court considered whether Petitioner received ineffective assistance as a result of trial counsel's opening argument. *See Burns II*, 813 So. 2d at 677. Counsel asked the jury to "be open to the defense theory that Phillip Hale and not Jo Jo Burns had killed McBride." *Id.* The court noted that the decisions of trial strategy are presumed reasonable, and that whether to make an opening statement is a strategic decision. *Id.*

---

[7] Miss. Code Ann. § 47-7-3(1)(f) provides that "[n]o person shall be eligible for parole who is charged, tried, convicted, and sentenced to life imprisonment under the provisions of Section 99-19-101."

The court found that trial counsel had made no statements that could be considered prejudicial, and it determined that the argument was not deficient. *Id.* The court determined counsel made the best of a "difficult situation," inasmuch as Petitioner had admitted his role in the murder to several people and his accomplice was going to testify against him. *Id.* at 677-78.

Trial counsel's strategic decisions do not form the basis for a claim of ineffective assistance of counsel unless the strategy chosen "is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Petitioner does not present the Court with the argument trial counsel should have made, nor has he demonstrated that he was in any way prejudiced by the argument that was made. This claim shall be dismissed.

### E. Petitioner's presence at post-trial motions

On post-conviction review, the Mississippi Supreme Court rejected Petitioner's claim that he received ineffective assistance of counsel due to trial counsel's failure to secure Petitioner's presence during argument on his motion for judgment notwithstanding the verdict, and it also rejected Petitioner's related claim that he was not consulted about the content of the motion. *See Burns II*, 813 So. 2d at 679. The court noted it had previously held that a defendant's presence at hearing on post-trial motions is neither necessary or desirable, and it found Petitioner had alleged no prejudice as a result of trial counsel's failure to secure his presence or consult with him about the content. *Id.* Petitioner presents no explanation for why federal habeas relief is warranted with regard to the State court's disposition of this claim, and relief is denied. *See, e.g, Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1012.

**F.   Presentation of issues on direct appeal**

On post-conviction review, the Mississippi Supreme Court considered whether Petitioner's attorneys rendered ineffective assistance in their presentation of issues on direct appeal. *See Burns II*, 813 So. 2d at 679.  After considering the allegations raised, the court determined that Petitioner failed to demonstrate that he suffered prejudice by the fact that his attorneys presented issues that were ultimately unsuccessful. *Id.* at 680.  The court noted that while it did not find reversible error with regard to the issues presented on direct appeal, "the decision to present them was not ineffective assistance of counsel.  Choosing which issues to raise and which to omit is a matter of strategy which should be left to an attorney's discretion." *Id*. at 680.  The Court notes that the fact that appellate counsel was unsuccessful in their efforts, without more, does not constitute ineffective assistance of counsel. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).  Petitioner presents no explanation for why federal habeas relief is warranted with regard to the court's disposition of this claim, and relief is denied. *See, e.g, Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1012.

**G.   Claims not presented to the State court**

Petitioner alleges in his federal habeas petition that trial counsel rendered ineffective assistance in his closing argument at sentencing, and that appellate counsel performed ineffectively in failing to assign as error Petitioner's absence from the hearing on post-trial motions. (*See* Pet. 6, 7).  It would appear that these claims have never been presented to the State court and are therefore barred from federal habeas review. *See Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (argument based on factual theory distinct from that presented in State court fails to meet exhaustion requirement).  As Petitioner may no longer obtain redress in

State court, this Court may consider the claims only upon Petitioner's demonstration of cause and prejudice for his failure to properly present the claims in State court. *See*, *e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004); *see also* Miss. Code Ann. §99-39-5(2) (time bar) and § 99-39-27(9) (successive petition bar). Petitioner has failed to offer argument that would demonstrate cause and resulting prejudice with regard to either claim, and federal habeas review of the merits of these claims is precluded.

### Conclusion

For the reasons set forth above, Petitioner has not demonstrated that the denial of his State petition was contrary to, or involved an unreasonable application of, clearly established federal law, nor has the denial been shown to have been based on an unreasonable determination of facts in light of the evidence presented in the State court proceedings. Accordingly, the Court **DENIES** federal habeas relief, and the instant petition shall be dismissed with prejudice. All other pending motions are dismissed as moot. A separate order in accordance with this opinion shall issue today.

**THIS** the 14th day of August, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE